UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

---

CONVERGEN ENERGY WI, LLC
and
THEODORE HANSEN,

                    Plaintiffs

v.

CONVERGEN ENERGY LLC,
and
LIBRA CAPITAL US, INC.,

                    Defendants.

Case No.: 20-cv-00823

Brown County Circuit Court
Case No.: 2020 CV 0495

---

### AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

As their Amended Complaint for Declaratory Judgment, Plaintiffs Convergen Energy WI, LLC and Theodore Hansen, by their attorneys von Briesen & Roper, s.c., hereby do allege and state as follows:

### NATURE OF ACTION

1. At the center of this action is the transaction orchestrated by Libra Capital US, LLC (hereinafter "**Libra**"), and its wholly owned subsidiary Convergen Energy (hereinafter "**CE**") by Libra's Chief Investment Officer/CE's President, Fidel Andueza (hereinafter "**Andueza**") to divest Libra/CE of Convergen Energy WI, LLC (hereinafter "**CE-Wisconsin**").

2. To satisfy debt covenants, Libra needed to raise cash by December 31, 2019. In order to do so, Libra directed CE and Fidel to quickly divest itself of CE-Wisconsin.

3. Andueza then arranged a transaction, whereby Fidel's subordinate employee at Libra, Steven Brooks (hereinafter, "**Brooks**"), Gregory Merle and two of Andueza's contacts, Daniel Garcia Escandon and Ramon Uriarte Inchausti, would acquire CE-Wisconsin from CE and Libra. Andueza further arranged for his contact, Javier Busto Ferraz to provide debt financing in the acquisition of CE-Wisconsin.

4. Libra, through its employee Andueza, was aware of and approved every detail of the transaction.

5. Immediately after the transaction closed, Libra denied having knowledge of the persons involved in the transaction and sought concessions.

6. Libra was granted concessions in the form of additional consideration and a payment by Brooks personally as he separated from Libra, each representing a release and satisfaction of the matter.

7. Then on May 11, 2020, Libra demanded an additional payment of $10,000,000 by May 14, 2020, or it would file suit in New York State Courts. A copy of the demand and draft New York complaint is attached hereto as Exhibit A. (The "**Draft New York Complaint.**")

8. The Plaintiffs seek declaratory judgment as to the rights and duties of the parties and persons involved in the transaction.

## PARTIES

9. Plaintiff CE-Wisconsin (f/k/a Greenwood Fuels) is a Delaware limited liability company registered as a foreign limited liability Company in Wisconsin with a principal place of

business of 600 Liberty Street, Green Bay, WI 54304. CE-Wisconsin is currently a wholly-owned subsidiary of NianticVista Energy, LLC (hereinafter, "**Niantic**").

10. Plaintiff Theodore Hansen (hereinafter "**Hansen**") is an adult private person with no legal disabilities. Hansen is a resident of the State of Wisconsin, with an address of 798 Terra Cotta Drive, Neenah, WI 54956. At all relevant times, Hansen was the chief executive officer of CE-Wisconsin. Hansen reported to Fidel Andueza at Libra.

11. Defendant CE, is a Delaware limited liability company, with its registered agent as Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware. Through other intermediate subsidiaries, CE is wholly owned and controlled by Libra. At all relevant times, Andueza served as CE's President.

12. Defendant Libra is a Delaware corporation registered as a foreign business corporation in New York with a principal place of business of 134 East 40th Street, New York, NY 10016. Libra is a conglomerate consisting of several affiliates and subsidiaries. Though intermediate subsidiaries, Libra wholly owns and controls CE. Andueza serves as Libra's Chief Investment Officer.

## JURISDICTION AND VENUE

13. The Court has jurisdiction over the parties in this matter pursuant to 28 U.S.C. § 1332. There is complete diversity between the parties and the amount in controversy exceeds $75,000.

14. The Court has jurisdiction over the subject matter of this suit pursuant to 28 U.S.C. § 2201, because this suit asks the Court to declare rights, status and other legal relations between the parties hereto.

15. Venue in Eastern District of Wisconsin is proper pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claim occurred therein.

**RELEVANT FACTS**

16. CE-Wisconsin owns a proprietary process to convert waste materials such as paper and plastic and convert it to a coal substitute fuel pellet.

17. CE-Wisconsin was purchased by Libra, through CE, in 2010. CE is a wholly owned subsidiary of Libra, and CE-Wisconsin became a wholly-owned subsidiary of CE. At all relevant times, Hansen has been the CEO of CE-Wisconsin.

18. As of December 31, 2019, Libra was required to satisfy bank lending covenants.

19. To satisfy the lending covenants, Libra pursued the sale of CE-Wisconsin with the goal of raising cash by December 31, 2019.

20. The effort to sell CE-Wisconsin was directed by Fidel, Libra's Chief Investment Officer and CE's President.

21. Brooks was a senior vice president for Libra who reported to Andueza.

22. Andueza indicated to Brooks that Libra wanted to sell CE-Wisconsin before December 31, 2019, and that this could be a good investment for Brooks. Andueza further introduced personal contacts of his as investors in the business. Andueza arranged an in-person meeting, which he attended, to discuss the investment, and had multiple one-on-one conversations with the investors. Andueza further was aware of the financial pressures that Libra faced including bank covenants that were tested at year-end and pressured both Brooks and the investors to close the transaction.

23. Andueza contacted Gregory Merle, Daniel Garcia Escandon and Ramon Uriarte Inchausti to solicit their interest in joining Brooks in the acquisition of CE-Wisconsin, as well as Javier Busto Ferraz in the form of debt financing.

24. Andueza worked with Merle, Escandon, Inchausti and Ferraz to structure a transaction suitable to Libra.

25. On December 15, 2019, at the request of Andueza, Brooks prepared and emailed a transaction summary to Andueza. A copy of the Email and summary report are attached hereto as Exhibit B.

26. BMO Harris, N.A. was the lender to Libra/CE related to their investment in CE-Wisconsin prior to and after the January 31, 2020 transaction.

27. With Andueza's knowledge and direction, Brooks communicated with BMO in connection with the debt financing of the CE-Wisconsin transition.

28. Andueza traveled to Wisconsin to meet with BMO Harris and helped arrange the debt financing for the transaction.

29. Andueza and the investors in the acquisition decided to use Merle's pre-existing company, Niantic, to consummate the transaction. Andueza was not only aware of but arranged for Merle's and Niantic's role in the transaction.

30. Andueza is an expert in the financial analysis of companies in acquisition. He reviewed the proposed terms of the CE-Wisconsin acquisition, including the purchase price, and adjudged them fair.

31. The original closing date of the acquisition was January 31, 2020, at which time CE, CE-Wisconsin and Niantic entered into the acquisition agreement attached hereto as Exhibit C (the "**Acquisition Agreement**").

32. The Acquisition Agreement contains a binding arbitration clause, requiring "[a]ny dispute arising between the Parties" to be resolved in arbitration. (Exhibit C, § 9.7.)

33. Upon information and belief, the sale of CE-Wisconsin and Brooks' involvement as an investor was known of, approved, and directed by Andueza and other executives at CE/Libra, including George Logothetis, Chairman and CEO of Libra.

34. Andueza was fully aware of and intricately involved in all aspects of the negotiation and closing of the acquisition, including that Brooks would be one of the investors who ultimately acquired a share of CE-Wisconsin.

35. Andueza's knowledge as CE's President and Libra's CIO is attributed to CE and Libra. CE and Libra therefore had full knowledge of the negotiation, conditions, terms and nature of the acquisition prior to the original January 30, 2020 closing date, and did not object to any of the transactions.

36. Nevertheless, immediately after the acquisition closed, Libra executives approached Brooks, accused him of improper self-dealing, breaches of duty, and other wrongdoing in connection with the acquisition, and threatened him with legal action and criminal prosecution.

37. Brooks and Libra thereafter negotiated a separation agreement, which was executed on February 19, 2020 (the **"Brooks Separation Agreement"**)**.**

38. Brooks, CE, CE-Wisconsin, and Niantic also negotiated an Amended and Restated Closing Statement, which was executed on February 21, 2020. The Amended Closing Statement is attached hereto as Exhibit D (the **"Amended Closing Statement"**).

39. The Amended Closing Statement states in pertinent part: "The Buyer and Seller agree that there will be no further adjustments or changes to this Amended and Restated Closing Statement after the date hereof, as both Parties have confirmed that this document is now complete and accurate in all regards."

40. Plaintiffs assert that this language, read in conjunction with the Acquisition Agreement and Brooks Separation Agreement, means that Plaintiffs and Brooks were released from any liability that may have arisen in connection with the acquisition, and otherwise resolved all differences between the parties.

41. Plaintiffs further assert that CE and Libra had full knowledge and understanding of the terms of the negotiation, conditions, terms and nature of the acquisition prior the execution of the Amended Closing Statement.

42. On or about May 11, Plaintiffs received an email and the attached Draft New York Complaint from Attorney Michael Stolper, on behalf of Libra. (*See* Exhibit A).

43. Attorney Stolper's email threatens that he will file the Draft New York Complaint no later than noon on May 14, 2020, if Plaintiffs and Brooks did not first resolve the matter. (*See* Exhibit A).

44. The Draft New York Complaint levels several causes of action against CE-Wisconsin, its owner Niantic, Hansen and Brooks, generally alleging that Brooks fraudulently

engineered an advantageous deal for himself, Niantic, CE-Wisconsin and Hansen without Libra's knowledge.

45. Plaintiffs filed the original complaint in this action to clarify the rights and responsibilities of the parties under various agreements in Brown County on May 14, 2020.

46. On the same day that Plaintiffs filed this case, Libra filed an action in the Southern District of New York. At that time, New York State courts were not accepting new lawsuits. Since there was not complete diversity, Libra manufactured federal question jurisdiction by expanding its relatively minor trade secret and confidential information allegations into full-fledged claims pursuant to 18 U.S.C. § 1836 and 18 U.S.C. § 2701, and then asserted supplemental jurisdiction over its primary claims pursuant to 28 U.S.D. § 1367. (the "**SDNY Complaint**").

47. The SDNY Complaint is predicated on the notion that the claims set forth therein survived the acquisition of CE-Wisconsin, as recorded in the Acquisition Agreement and the Amended Closing Statement. As noted above, Plaintiffs assert that all such claims have been released.

48. The SDNY Complaint is further predicated on the notion that Libra and CE were unaware of the material terms and conditions underlying the Acquisition Agreement and the Amended Closing Statement. As set forth *supra*, Libra and CE, through Andueza and others, had full knowledge of, and consented to, the terms and conditions underlying the Acquisition Agreement and the Amended Closing Statement.

49. The SDNY Complaint ignores the fact that disputes under the Acquisition Agreement are to be submitted to binding arbitration before a three (3) person panel pursuant to the American Arbitration Association Commercial Rules. (*See* Exhibit C, § 9.7.) The claims related to the Acquisition leveled in the SDNY Complaint fall squarely within the scope of that arbitration clause.

50. As a result, there is an actual and justiciable controversy between the parties warranting a declaration by the Court.

## COUNT I: DECLARATORY JUDGEMENT

51. Plaintiffs incorporate paragraphs 1 through 43 of this complaint as if fully set forth herein.

52. Section 2201 of 28 U.S.C. confers upon district courts the ability to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

53. Disputes under the Acquisition Agreement are subject to binding arbitration; however, the SDNY Complaint ignores this fact and seeks judicial intervention. Plaintiffs are entitled to a declaration that the arbitration clause in that agreement requires all disputes, including those raised in the SDNY Complaint, to be submitted to binding arbitration.

54. In the alternative, In this matter, contract and equitable rights against the Defendants have been asserted by Plaintiffs. Plaintiffs have a right to take advantage of releases granted to them or for their benefit in the Acquisition Agreement, and Amended Closing Statement,

and to a declaration that CE and Libra knew of and consented to all material conditions and terms of the acquisition prior to closing.

55. All justiciability requirements are met.

56. Plaintiffs seek a declaration that, pursuant to the Acquisition Agreement and the Amended Closing Statement, read in conjunction with the Brooks Separation Agreement, they have been released of all claims that Libra or CE may have had against Plaintiffs CE-Wisconsin and Hansen, including but not limited to the claims set forth in the Draft New York Complaint.

57. Plaintiffs seek a further declaration that CE and Libra knew of and consented to all material conditions and terms of the acquisition prior to closing, such that the claims set forth in the Draft New York Complaint are without merit.

**WHEREFORE**, Plaintiffs CE-Wisconsin and Hansen hereby ask the Court for the following relief:

A. A declaration that the arbitration clause in the Acquisition Agreement requires all disputes arising under that agreement, including those raised in the SDNY Complaint, to be submitted to arbitration.

B. In the alternative, a declaration that, pursuant to the Acquisition Agreement and the Amended Closing Statement, read in conjunction with the Brooks Separation Agreement, they have been released of all claims that Libra or CE may have had against Plaintiffs CE-Wisconsin and Hansen, including but not limited to the claims set forth in the Draft New York Complaint.

C. A declaration that CE and Libra knew of and consented to all material conditions and terms of the acquisition prior to closing, such that the claims set forth in the Draft New York Complaint are without merit.

D. Any necessary and proper supplementary relief, pursuant to 28 U.S.C. § 2202.

E. Such further relief as the Court deems proper.

Dated: June 23, 2020 By: *s/William E. Fischer*
Benjamin LaFrombois, Esq., SBN: 1027910
William E. Fischer, Esq., SBN: 1045725
VON BRIESEN & ROPER, S.C.
2905 Universal Street, Suite 2
Oshkosh, WI 54904
Direct Dial: 920.232.4843
Email: wfischer@vonbriesen.com
*Attorneys for Plaintiffs Convergen Energy WI, LLC and Theodore Hansen*