UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

---

CONVERGEN ENERGY WI, LLC, and
THEODORE HANSEN,

      Plaintiffs,

v.                                                        Case No. 20-cv-00823

CONVERGEN ENERGY LLC,
L'ANSE WARDEN ELECTRIC COMPANY, LLC, and
LIBRA CAPITAL US, INC.,

      Defendants.

---

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER VENUE TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

## INTRODUCTION

On May 14, 2020, Defendants, Libra Capital US, Inc., Convergen Energy LLC, and L'Anse Warden Electric Company, LLC, filed suit against several entities and individuals, including Plaintiffs Convergen Energy WI, LLC and Theodore Hansen, in the United States District Court for the Southern District of New York. The suit arises out of the fraudulent acquisition of Convergen Energy WI, LLC, ("CE-Wisconsin") in a complicated scheme which involved both Plaintiffs and the Defendants and which the New York District Court complaint describes in detail. Among other things in that action, Defendants seek rescission of the acquisition agreement related to the sale of CE-Wisconsin, of a supply agreement pertaining to the sale of pellets between L'Anse and CE-Wisconsin, and damages. Also, on May 14, 2020,

Plaintiffs filed suit against Defendants in Brown County Circuit Court of Wisconsin seeking declaratory judgment to enforce those acquisition and supply agreements as validly negotiated and made. The Defendants removed the case to the United States District Court for the Eastern District of Wisconsin on June 2, 2020 on the basis of citizenship diversity between Plaintiffs and Defendants, and the amount in controversy exceeding $75,000.

To complicate matters, the Plaintiff, CE-Wisconsin, recently split its claims and filed another lawsuit, this one originally venued in Dane County Circuit Court. It sued L'Anse Warden Electric Company, LLC, claiming that a supply agreement was critical to its business and that L'Anse owed it in excess of $300,000 and was unlikely to pay or honor the agreement in the future. Although the suit ostensibly sought an injunction compelling payment until the parties arbitrated the matter, CE-Wisconsin supplied no information or evidence showing irreparable harm would occur or that the suit was anything but a claim for money damages. It claimed the supply agreement's terms entitled it to equitable relief without proof.

L'Anse removed the case to the Western District of Wisconsin, moved to transfer that case to the Southern District of New York, opposed CE-Wisconsin's efforts to obtain an injunction, and filed a Motion to Stay the Arbitration in the Southern District of New York. Defendants now move to transfer this case to the Southern District of New York pursuant to 28 U.S.C. § 1404(a), as the Southern District of New York is the most appropriate forum and transfer there should unite these multiple cases in a single venue.

### LEGAL STANDARD

Under 28 U.S.C. § 1404(a), federal courts may transfer cases to other districts where venue is appropriate and transfer better serves the convenience of parties and witnesses and promotes the interests of justice. *See Chicago, R.I. & P.R. Co. v. Igoe*, 212 F.2d 378, 379 n. 1

(7th Cir. 1954). Section 1404 prevents the waste of "time, energy, and money" and protects "litigants, witnesses, and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964). Moreover, especially important, section 1404(a) prevents duplicative trials about the same or similar subject matter and, thus, removes the risk of inconsistent rulings, findings, verdicts, and judgments. *Minnesota Mining & Mfg. Co. v Technical Tape Corp.*, 123 F. Supp. 497, 499 (N.D. Ill. 1954).

## ARGUMENT

### I. CONVENIENCE AND THE INTERESTS OF JUSTICE FAVOR TRANSFER

Venue is most appropriate in the Southern District of New York because (1) the key and operative facts arise there; (2) many essential witnesses live there and two Defendants are headquartered in the Southern District of New York; (3) the location of and ease of access to documents and other sources of proof are located at the Defendants' headquarters in the Southern District; (4) the interests of justice favor transfer there.

### A. The Operative Facts Occurred in the Southern District of New York

The place where the key events occurred is one factor to be considered in motions to transfer venue. *Research Automation, Inc. v. Schrader-Bridgeport Intern., Inc.* 626 F.3d 973, 978 (7th Cir. 2010). Courts consider the entire sequence of events underlying the claim, rather than any single action which may have triggered a claim. *Estate of Moore v. Dixon*, 460 F. Supp. 931, 935 (E.D. Wis. 2006). The majority of facts in this case stem from activities that occurred in the Southern District of New York, starting with creation of the acquisition and supply agreements, the subject matter in each suit. (Declaration of George Burnett, Ex. A. Referred to as "Burnett Dcl."). The acquisition and supply agreements at the center of the case were borne out of a fraudulent transaction that was orchestrated and consummated in New York. (Burnett Dcl.,

- 3 -
Case 1:20-cv-00823-WCG   Filed 06/25/20   Page 3 of 13   Document 11

Ex. A, ¶¶32-50). During the supposed negotiations, the individual perpetrators, all affiliated with the Plaintiffs, had extensive contacts with Defendants' representatives in New York, and the person ostensibly in charge for the Defendants, Steven Brooks, lived and worked there. (Burnett Dcl., Ex. A, ¶¶51-4). The agreement itself was executed, in part, by signatories located in New York. (Burnett Dcl., Ex. A, ¶37). As the Plaintiffs tacitly acknowledge, the lawsuit's only nexus to the Eastern District of Wisconsin is that CE-Wisconsin, the acquired asset, is physically located in Green Bay, Wisconsin. (Burnett Dcl., Ex. A, ¶16).

### B. Location of Essential Witnesses and Evidence Favors Transfer

The convenience of key witnesses is also an important factor in venue transfer motions under § 1404(a). *Lauders v. 3M Co.,* 2008 WL 2705444, *2 (N.D. Ill. 2008). In analyzing the convenience of witnesses, courts consider: (1) the number of potential witnesses located in transferor and transferee districts; (2) the materiality of their testimony; and (3) transportation expense. *Environmental Services, Inc. v. Bell Lumber and Pole Co*. 607 F. Supp. 851, 854 (N.D. Ill. 1984). Moreover, the availability of non-testimonial evidence and the expenses of procuring their production is a factor to be considered. *Hayes v. Smith,* 1992 WL 225560 (N.D. Ill. 1992) ("ease of access to the sources of proof favors" the proposed forum when "the overwhelming majority of documents related to the litigation are located" there).

The Plaintiffs here sought to enforce provisions of the acquisition and supply agreements, (Burnett Dcl., Ex. B, ¶¶57-67), while the Defendants assert both agreements are the product of a fraudulent scheme. Resolving questions related to the agreements' validity and enforceability will necessitate testimony from individuals with knowledge of or who participated in their negotiation and execution. Many of these individuals are located in the Southern District of New York. These especially include Steven Brooks, who arranged the sale and the supply agreements

- 4 -
Case 1:20-cv-00823-WCG   Filed 06/25/20   Page 4 of 13   Document 11

while double dealing for himself, all as an employee of Convergen Energy. (Burnett Dcl., Ex. A, ¶¶2-4).

In addition, the Plaintiffs' claims for enforceability of the agreements unquestionably call for the production of documents and evidence located at Defendant-Libra Capital US, Inc. and Defendant-Convergen Energy LLC, and each possesses a principal place of business in New York. It is fair to assume the Plaintiffs will seek information, again including documents and internal communications, related to the formation and execution of the agreements. A majority of that information is stored electronically and physically at the Defendants' principal place of business in the Southern District of New York, where Brooks worked. (Burnett Dcl., Ex. A, ¶¶2, 12). Furthermore, as the New York complaint reveals, NianticVista Energy, which acquired CE-Wisconsin, is headquartered in nearby New Jersey, and multiple participants in the illicit scheme reside in Europe, which enjoys direct air travel to New York but not Green Bay. (*Id.*, Ex. A, ¶¶3, 12-21). Through expedited discovery, two material witnesses and potential defendants have also been identified; one in Connecticut and another in Europe. (Declaration of Dov Gold, ¶3). The location of people and companies and ease of access to documents and other sources of proof located in New York, therefore, favors transferring venue.

### C. Transferring Venue is in the Interests of Justice

The interests of justice is an especially significant consideration in determining venue transfers under Section 1404(a). *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 221 (7th Cir. 1986). The inquiry focuses on conserving judicial resources and efficient adjudication of claims. *Rosen v. Spirit Airlines, Inc.*, 152 F. Supp.3d 1055, 1063 (N.D. Ill. 2015).

In analyzing the interests of justice, courts routinely mandate trying related cases together, *id.*, and transfer cases to federal districts where related actions are pending. *Securities*

- 5 -
Case 1:20-cv-00823-WCG   Filed 06/25/20   Page 5 of 13   Document 11

*and Exchange Commission v. First Nat. Finance Corp.,* 392 F. Supp. 239, 241 (N.D. Ill. 1975)(citing *Jacobs v. Tenney*, 316 F. Supp. 151 (D.Del.1970)). The Plaintiffs' suit follows the commencement of the Defendants' related action in the Southern District of New York. The Defendants' Southern District of New York suit, filed on May 14, 2020, involves the same parties and identical facts related to this suit. Moreover, the New York case is complete, involving 15 parties – 4 plaintiffs (the equivalent of defendants here) – and 11 defendants – who all participated in the scheme. The New York suit assures a complete adjudication among parties, while this suit does not, since this case involves some but not all of the claims the New York complaint raises. For example, the Plaintiffs' complaint here excludes the misappropriation of confidential information, an important issue the New York complaint addresses. (*Id.*, Ex. A, ¶¶55-60, Ex. B). Finally, the Defendants have moved to transfer the pending matter in the Eastern District of Wisconsin to the Southern District of New York, while the Plaintiffs have done nothing to eliminate the obvious risk of conflicting decisions.

Especially important, the advanced procedural history of the Defendants' Southern District of New York suit strongly favors transferring venue in the interests of justice. The Court in the Southern District of New York has already assessed the merits of the Defendants' claims and issued a temporary restraining order against the Plaintiffs. (Burnett Dcl., Ex. C, D). A preliminary injunction hearing is scheduled for July 17, 2020. (Burnett Dcl., ¶6). In contrast, no substantive action has occurred in the Plaintiffs' Eastern District of Wisconsin suit, and none is scheduled. The New York court has ordered accelerated discovery, which is underway. (*Id.* ¶6). Due to this advanced procedural history, it is inefficient for multiple courts to invest time and effort addressing the facts and adjudicating issues common to each suit. *Rosen,* 152 F.3d at 1065. Moreover, failure to transfer venue threatens to result in disparate outcomes whereby one

district enforces the agreements while the other rescinds them. Ultimately, transferring venue to the Southern District of New York is procedurally convenient, promotes efficient administration of justice, and prevents inconsistent results.

Not to be ignored is the Plaintiff's egregious forum shopping, particularly as to the lawsuit filed in the Western District of Wisconsin. (Burnett Dcl., Ex. B). There, CE-Wisconsin sued one of the Defendants here, L'Anse Warden Electric Company, LLC, seeking an injunction to collect supposedly past due payments and to ensure future payments, as well, under the supply agreement that was involved in this action. (*Id.* ¶¶13-15). The Plaintiffs claim there that in an agreement to supply fuel pellets, CE-Wisconsin and L'Anse agreed to arbitrate disputes and seek the entry of an injunction to facilitate payment while arbitration supposedly proceeds. (*Id.* ¶¶17-21). Yet, according to the allegations in the New York action, Steven Brooks betrayed his employer, Convergen Energy LLC, in negotiating that contract, and it should be rescinded. (*Id.*, Ex. A, ¶¶32-4). Ostensibly working for Convergen Energy, Brooks orchestrated the sale of CE-Wisconsin to NianticVista Energy LLC, a company that he has a significant financial interest in and probably owns with others. (*Id.*). In order to ensure that CE-Wisconsin acquired a reliable buyer for its fuel pellets, Brooks created and approved a long-term contract, ostensibly on behalf of L'Anse, with CE-Wisconsin to purchase and supply those pellets for a decade on very lucrative and terms for CE-Wisconsin. (*Id.*). This all occurred when both companies were owned by Libra Capital but while negotiations were ongoing to sell CE-Wisconsin. (*Id.*).

Though complicated, the simple fact is that Brooks betrayed his employer to enhance his personal wealth. According to the New York complaint, he sold CE-Wisconsin at a $10 million discount or more and bound L'Anse Warden Electric to a supply contract for 10 years at above-market prices.

Against this backdrop, CE-Wisconsin split its claims. In this Court, it sought a declaratory judgment that the pellet supply contract was valid, fair, and enforceable, and that Convergen Energy and Libra knew and consented to all its material terms. (Compl. ¶¶47, 65). In the Western District, CE-Wisconsin seeks to enforce the same agreement. (Burnett Dcl., Ex. B, ¶¶13-18, 24). It asks the court to direct L'Anse "to continue to perform under the supply agreement," pay past due amounts, and pay for all future deliveries. (*Id.* ¶24). Both suits are subject to the same defenses – that they were the product of fraud and deceit and Brooks' breach of the duty of loyalty and betrayal of his employer. Even more to the point, they split the claims that CE-Wisconsin possesses, seeking an endorsement of the supply agreement in the action before this Court and an injunction enforcing the same agreement in the Western District. How Convergen Energy WI could seek dual remedies pertaining to the same agreement in two separate courts went inadequately explained at a status conference before Judge Conley recently.

Whatever the explanation, federal practice prohibited it. "The federal definition of a cause of action, when combined with the rule against claim-splitting, requires that a plaintiff allege in one proceeding all claims for relief arising out of a single core of operative facts, or be precluded from pursuing those claims in the future." *Shaver v. F.W. Woolworth Co.*, 840 F.2d 1361, 365 (7th Cir. 1988). As this court very recently explained, "The doctrine of claim splitting is related to, but distinct from, the doctrine of claim preclusion. While both doctrines serve to promote judicial economy and shield parties from vexatious litigation, claim splitting is more concerned with the district court's comprehensive management of its docket, whereas claim preclusion focuses on protecting the finality of judgments." *Scholz v. United States*, 2020 WL 3051565 (E.D. Wis., June 8, 2020). This Court concluded there that the plaintiff was required to allege "in one proceeding, all claims arising out of a single set of operative facts." *Id.* Thus,

knowing of both claims, the plaintiffs' alternatives were to raise them in a single lawsuit or forfeit one altogether. Filing "an entirely new suit based on the same set of core operative facts" was absolutely forbidden; as the Court indicated, "this is claim splitting pure and simple". *Id.* ¶4.

The Court ultimately dismissed the complaint in *Shaver*, but here the remedy sought is different. The objective should be to center the allegations in a single lawsuit. The only case where a single lawsuit exists to effectively resolve all of these claims is the New York District Court action.

In a tacit admission that its filing in the Western District was completely inappropriate, the Plaintiffs attempted to correct the problem by amending parts of their lawsuit here. (Dkt. 9). The Plaintiffs filed an amended complaint Tuesday eliminating L'Anse as a named party and removing all direct reference to the supply agreement. (*Id.*). The amended complaint now seeks the Court's blessing that the acquisition agreement was fully and fairly negotiated and constitutes a binding agreement as well as enforcement of the agreement's arbitration clause. (*Id.* ¶53). The amended complaint adds that a separation agreement between Steven Brooks, the former Convergen Energy executive who superintended the acquisition while also serving as an architect of the fraud, and Convergen Energy somehow released others from the claims filed in New York. (*Id.* ¶54). Brooks is a party to that action, as are the Plaintiffs, but he is not a party here.

How this amendment justifies conducting three different lawsuits and an arbitration all pertaining to this acquisition is a mystery.

But first, the strategy is flawed, because even with the amendment, this lawsuit still implicates the supply agreement that is the subject of the actions in the Western District and the Southern District of New York. The amended complaint seeks a declaration that "pursuant to the

- 9 -
Case 1:20-cv-00823-WCG   Filed 06/25/20   Page 9 of 13   Document 11

Acquisition Agreement and the Amended Closing Statement, read in conjunction with the Brooks Separation Agreement, they [the Plaintiffs] have been released of all claims that Libra or CE [Convergen Energy LLC] may have had against Plaintiffs CE-Wisconsin and Hansen, including but not limited to the claims set forth in the Draft New York Complaint." (Dkt. 9, ¶56). But the New York complaint makes strong allegations and serious claims against Hansen and Convergen Energy WI, LLC and others over the supply agreement. In paragraphs 62 and 65 of that complaint, the New York Plaintiffs charge that Brooks made material false representations to the company about "the appropriateness of the new Supply Agreement between the Power Plant and the Pellet Plant" and seek compensation because "the Power Plant is being overcharged in its supply contract with the Pellet Plant, the Power Plant is being overcharged for Hansen's time to run the Pellet Plant post-acquisition, and $196,420.00 in cash went to the Pellet Plant instead of Convergen at the closing." (Burnett Dcl., Ex. A). Elsewhere in the New York complaint, the Plaintiffs contend that Brooks ordered significant capital improvements at the pellet plant at Convergen Energy's expense shortly before closing. (*Id.* ¶4). The complaint charges that Hansen, as a senior executive exercising considerable control over the power and pellet plants, including managing the flow of information to the company, participated in Brooks' fraudulent scheme and, therefore, violated his fiduciary duty to the Plaintiff. The New York complaint seeks compensatory damages for the breach of those fiduciary duties for, among other things, the Power Plant "being overcharged in its supply contract with the Pellet Plant," the overcharges for Hansen's time, $196,420 in cash that went to the Pellet Plant instead of Convergen at closing, and for Hansen's and others' invasion and theft of confidential information and trade secrets pertaining to Convergen, the power plant, and other matters. (*Id.* ¶¶70-2).

The important point is that the New York complaint is replete with allegations pertinent to the power plant and charges CE-Wisconsin and Hansen for damages involving the supply agreement. By seeking a declaration that the Defendants somehow released those claims, the Plaintiffs necessarily implicate the New York and Western District actions. The amended complaint is, then, nothing more than a subterfuge to pretend that this case no longer involves the supply agreement, when the supply agreement is one of the agreements at its center.

In that amended complaint, the Plaintiffs also allude several times to the New York court's supposed lack of subject matter jurisdiction and claim the Defendants concocted federal law based trade secret claims as a pretext to acquire federal court jurisdiction for the New York action. (Am. Compl. ¶46). That contention, however specious, supplies another reason to transfer the case, because the New York District Court should decide and address its own jurisdiction. As a matter of comity, this Court should defer and refrain from imposing its judgment, directly or indirectly, on a sister court.

Moreover, the New York District Court obviously does not share the Plaintiff's cynicism about its jurisdiction, for it entered a temporary restraining order that has been extended by stipulation several times, and has scheduled a preliminary injunction hearing to occur in a few weeks, all without serious challenge to the Court's authority to do so. Subject matter jurisdiction must be addressed at the outset of the case, without proceeding to the merits, because jurisdiction affects everything the court does. *Johnson v. Wattenbarger*, 361 F.3d 991, 993 (7th Cir. 2004). Ironically, the Plaintiffs raise the issue here, without seriously advancing it in the New York action, and strong reason suggests that this Court should defer to the New York court's judgment about its power to act.

Ultimately, the Plaintiff concedes in its amended pleading that it filed the declaratory judgment action as a preemptive response to the prospect of a New York based lawsuit. (Am. Compl. ¶¶43-5). This type of anticipatory filing runs counter to both New York and Wisconsin law. *see e.g. OMC LLC v. S&E Gourmet Cuts, Inc.*, No. 16-CV-833-WMC, 2017 WL 3484964, at *3 (W.D. Wis. Aug. 14, 2017) (dismissing a declaratory judgment action as an anticipatory lawsuit where it was filed "to preempt the imminent threat by defendant"); *Skiva Int'l, Inc. v. Minx Int'l Inc.*, No. 15-CV-4580 KBF, 2015 WL 5853854, at *2 (S.D.N.Y. Oct. 7, 2015) (dismissing a declaratory judgment action as an anticipatory lawsuit where "Plaintiff plainly filed this suit in anticipation of defendant filing a . . . suit against it."). and that is just part of the gamesmanship the Plaintiff has displayed throughout these litigations. It, of course, filed the declaratory judgment action solely to preempt the New York case. It expressly filed that action to obtain, among other things, this Court's blessing of its supply agreement. It then filed a case in the Western District to enforce the same agreement, even though it had raised that agreement before this Court in an action that it sued L'Anse on directly. The Plaintiffs, therefore, filed two lawsuits on the same subject in different courts a few weeks apart.

And when that strategy came under strong criticism from Judge Conley in a recent conference, the Plaintiffs revised the Eastern District court complaint to eliminate direct reference to the supply agreement, as if that simplistic effort would now justify litigating this acquisition in four different forums. Of course, for the reasons stated, the supply agreement still remains an important part of the case, and this blatant attempt at forum shopping and manipulation should not be rewarded.

## CONCLUSION

The Plaintiff in this case has raised some but not all of the claims present in the New York case. For ease of witnesses, the existence of the core transaction occurring in New York, and for the Plaintiffs' disgraceful attempt to split claims, this matter should be transferred to the Southern District of New York, where all claims can be fully and fairly adjudicated together.

Accordingly, the Defendants respectfully request that this Court transfer this suit to the Southern District of New York.

Respectfully submitted this 25th day of June, 2020.

*s/R. George Burnett*_____
R. George Burnett
Law Firm of Conway, Olejniczak & Jerry, S.C.
P.O. Box 23200
Green Bay, WI 54305-3200
Phone: (920) 437-0476
Fax: (920) 437-2868
Wis. State Bar No. 1005964
gb@lcojlaw.com

*Attorneys for Defendants Convergen Energy LLC, L'Anse Warden Electric Company, LLC, and Libra Capital US, Inc.*

3435233_2